Stanard, J.,
after stating the case, proceeded:
The fact that on the revaluation of the building, Higgins took out a policy in his own name, may, I think, be at once dismissed from the case, as that fact ought not, in any manner, to atfect the interest of the tenant for life, in the then existing insurance. Stripped of that fact, the case for decision is that of a building insured, in which one is entitled to the life estate and another to *410 the reversion, sustaining a partial injury from fire, for which indemnity is due from the insurers; and the injury repaired by the tenant for life, at a cost exceeding ^ amount of the indemnity. And the question is, what are the rights of the tenant for life and the reversioner, respectively, in this indemnity ?
In the case of Haxall's ex’ors v. Shippen, 10 Leigh 536, the Court decided, and that decision is, in my opinion, a governing authority, that where the title in an insured building is in a tenant for life and a reversioner, and the building is entirely destroyed, the property is in effect converted to personalty, and the parties have the like interest in the insurance money that they had in the building: that is, the tenant for life is entitled to the use of it for life, and the reversioner to the principal at the death of the tenant for life. And that the tenant for life cannot, by applying the money to the rebuilding of the house, defeat the reversioner’s title to have the money on the termination of the life estate: nor has the reversioner a right to require the tenant for life to apply the money to the rebuilding of the house.
This decision has been applied by the Court below to the case now in judgment; and if the cases be not distinguishable, the decree of the Court below must be affirmed.
To my perception, the distinction between the cases is not only visible, but broad and well defined.
In the case of a total destruction, or approaching it, the conversion of the interest in the building into the personal demand for the insurance, is complete. Nothing, or little remains to be preserved ,• and in such case it is at least problematical whether the interests of either the tenant for life or reversioner would be promoted by devoting the insurance money to the rebuilding of the house; and each of these parties ought to have a voice in the solving of the problem, on which disinterested men, of sound judgments, may have opposing opinions, *411 not dictated by mischievous caprice. And though such rebuilding may be to the advantage of one, it may at least not have the approbation of the other. Such approbation might be withheld, without referring such dissent to the reckless purpose of the self-infliction of injury, to cause damage to another. Now, in the case of a partial injury, such as that sustained in this case, where the building was worth 2500 dollars, and the injury was 530 dollars, and the indemnity therefor was 425 dollars, there was four fifths of the building to be preserved by the timely reparation of the damage, without which that four fifths was exposed to great dilapidation, and to ultimate ruin or destruction. To the tenant, the value of the building was greatly impaired ; and the reversioner was exposed to the total loss, if dilapidation should not be prevented by repairs. No rational mind could hesitate to say, that it was for the benefit of both, that 425 dollars should be expended, to save from ruin or destruction, a building worth 2500 dollars. The obvious and demonstrable interests of both were, that such repairs should be made ; and if the choice had been presented to the tenant, to apply the indemnity from the insurance to the reparation of the building, or to use the money, and let the building go to waste without repair, or to the reversioner, to leave the building without repair, and take the insurance money at the death of the tenant for life, the choice of both, unless that choice was dictated by some irrational perversity, meriting the most unqualified condemnation, would concur in the application of the indemnity from the insurance to the reparation of the building. By such reparation, the tenant for life has the use of a building worth 2500 dollars, instead of the use of money to the amount of 425 dollars; and the reversioner has the building at the death of the tenant for life, instead of 425 dollars in money; and during the life of the tenant for life, has a continuing insurance at a valuation of 2500 dollars, on which, should *412 the building be destroyed by fire, he would be entitled at the death of the tenant for life, instead of the 425 dollars, to the principal of the amount insured, about 2000 dollars. Between such alternatives, nothing but tjje most irrational and condemnable perversity would hesitate a choice.
The relations between the tenant for life and reversioner, as they affect the question involved in this case, may be considered under two aspects. By the strict common law rule, supposing there had been no insurance, the tenant is bound to repair, and as the statute of Anne has not been incorporated in our code, the tenant may be bound to repair the partial injuries from fire, at least so far as to prevent future dilapidations, to which such injury may expose the building. Under this aspect of the case, which devolves on the tenant the duty to make such repairs, the injuries to be repaired are exclusively his risks ; and it seems to be a plain consequence of reason and justice, that the indemnity stipulated for such injuries, should enure to him who is' bound to repair them. He who suffers the loss should have the indemnity, the claim to which arises solely from the loss. Otherwise the consequence would be, that he who sustained the whole loss would be bereft of the greater part of the indemnity; and that greater part would enure to him who is already fully indemnified, and has suffered no loss. Had an action of covenant been brought on the policy, which was the proper legal remedy, would not the claim of the tenant cover the whole of the indemnity ? The injury had been repaired by the tenant at an expense exceeding the insurance money. To the extent of the sum payable by the insurance company, and more, the tenant had been injured. On what principle could she have been denied any part of this inadequate indemnity ? Then suppose the action is by the reversioner, and the fact appears that all the injury was repaired, and more than repaired! What damage *413 has he sustained for which he could recover any thing ? And what pretext, in reason and justice, is there for withholding a portion of the inadequate indemnity from the tenant, who alone has suffered by the accident, to supply a fund to be recovered by him who has sustained no loss.
In the other aspect of the case, presented by the assumption that the tenant is not bound to repair, the argument has, in a great degree, been anticipated. The law to fix and define the rights of the parties, is not to bo sought in artificial or technical doctrines; but is the result of the application of the general principles of justice and convenience; giving predominating influence to those that tend to preserve rather than destroy ,• and to discountenance and repress reckless and mischievous caprice. The reason of the case gives the law; and that reason would forbid the self-inflicted loss, irrationally incurred to cause an equal or greater loss to another ; as would be the case were the tenant on the one hand, or the reversioner on the other, invested with the absolute power to deny the application of the indemnity from the insurance, to the reparation of the partial injury: and doom the injured building, so much more valuable than the partial indemnity, to dilapidation and ruin, or destruction. The rule in such a case, to give effect to the conservative spirit of the law, and prescribed by sound reason, equal justice, and public interest, is, that when such partial injury is caused by fire to an insured building, the title to which is in a tenant for life, or for other limited interest, and a reversioner, the insurance covering the entire fee, it is the right of each or either of them, to have the indemnity resulting from the insurance applied to the reparation of the building ; and as far as so applied, the interests of the parties in the insurance is absorbed, and is represented by the repaired building, as if to the extent of the repairs no injury had been sustained.
*414 The other Judges concurred in Stewards opinion.
The decree was as follows:
The Court is of opinion, that the decree is erroneous; and so much of the decree of the Court below as subjects the appellant to liability to the appellee Higgins at the termination of her life estate, for the principal of the sum she may receive from the insurance society; and suspends the decree in her favour against the said insurance society until she shall give bond and approved security to Higgins, conditioned to pay him the sum she may so receive from the said insurance society, when her life estate shall terminate ; and decrees that the parties respectively should pay their own costs, be reversed and annulled, and the residue of the said decree be affirmed; and that the appellee Higgins pay to the appellant the costs by her expended in the prosecution of her appeal in this Court; and also the costs by her expended in the prosecution of her suit in said Circuit Superior Court.